FILED

2006 Aug-21  PM 05:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TERRIE OUTLIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Civil Action No. 2:06-CV-147-VEH** |
| | ) |
| **THE JEFFERSON COUNTY** | ) |
| **BOARD OF HEALTH, and** | ) |
| **THE JEFFERSON COUNTY** | ) |
| **PERSONNEL BOARD** | ) |
| | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM OPINION</u>

Pending before the Court are the Motion to Dismiss the Verified Complaint (doc. 5) filed by Defendant Jefferson County Board of Health (hereinafter "JCBH").[1] Plaintiff Terrie Outlin (hereinafter "Outlin") brought this action against her employer, JCBH, under 42 U.S.C. § 1983 for alleged violations of her substantive and procedural due process rights under the Fourteenth Amendment of the United States Constitution.

For the reasons set forth herein, JCBH's Motion to Dismiss the Complaint (doc. 5) is due to be **GRANTED, in part**, and **DENIED, in part**.

---

[1]On July 15, 2006, Plaintiff filed an Amended Complaint (doc. 18) naming the Jefferson County Personnel Board.  Plaintiff's allegations as to JCBH did not change, however.

## I.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff began employment with JCBH in March 1996. (Compl. ¶ 5). In 1997, she became the Program Manager of JCBH's STD Clinic. (Id.). Plaintiff held this position when she initiated the current action. (Id.).

In 2001, JCBH attempted to demote Plaintiff to the position of Disease Intervention Specialist.[2] (Compl. ¶ 6). Plaintiff protested the demotion before the Jefferson County Personnel Board. (Id.). In January 2003, the Personnel Board concluded that the demotion was wrongful and ordered JCBH to reinstate Plaintiff to her former position. (Id.). JCBH appealed this decision to the Circuit Court of Alabama, which affirmed the Board's ruling by a three-judge panel. (Id.). The Alabama Court of Civil Appeals subsequently affirmed the Board's decision without opinion. (Id.).

Also in 2001, JCBH suspended Plaintiff for four days without pay for being absent from work without leave. (Compl. ¶ 7). In her 2001 performance review, Plaintiff was given several ratings of "below expectations," apparently based on the same infractions for which she had been suspended. (Id.). Plaintiff unsuccessfully protested the review before the Personnel Board. (Compl. ¶ 8). On June 4, 2004, a three-judge panel of the Circuit Court of Jefferson County held that the suspension

---

[2] JCBH's reason for this demotion is unclear.

on which the review was based had been wrongful.  (Id.).  JCBH, however, did not grant Plaintiff another performance review for that year, and failed to give her reviews for 2002, 2003, and 2004.  (Compl. ¶ 9); Amend. Compl. ¶¶ 6, 7)

Because JCBH did not give Plaintiff performance reviews for 2001 through 2004, Plaintiff did not receive a merit increase for four consecutive years.  (Compl. ¶ 10).  Additionally, although Plaintiff's four-day suspension in 2001 was determined to have been wrongful, Plaintiff did not receive back pay to compensate her for those days.  (Compl. ¶ 11).

In a letter dated March 30, 2005, Plaintiff demanded that JCBH conduct her performance reviews for 2001-2004 and provide her with appropriate merit increases, back pay, and performance incentives.  (Compl. ¶ 11).  In response, JCBH conducted "generally favorable" reviews for 2002-2004, but failed to conduct a review for 2001.  (Compl. ¶ 12).

In May 2005, JCBH calculated the amount of back pay it owed Plaintiff based on the 2002-2004 reviews and paid Plaintiff by direct deposit into her bank account with her regular paycheck.[3]  (Compl. ¶ 13).  Plaintiff asserts that JCBH improperly failed to include her in its calculation process or provide her with an accounting for

---

[3] The amount to which Plaintiff is entitled, and the amount JCBH actually paid her, are both in dispute.

3

the amount it paid her.  (Id.).

In a letter dated April 26, 2005, Plaintiff explained to JCBH that she had been deprived of her property rights, which consisted of annual performance reviews and the proper amount of back pay.  (Compl. ¶ 14).  JCBH responded that it had paid Plaintiff all amounts it owed her and that the matter had been resolved.  (Id.).

Plaintiff initiated this action on January 24, 2006.  (Doc. 1).  She alleges that JCBH's failure to provide her with annual performance reviews, merit increases, and back pay constituted a violation of her substantive and procedural due process rights. (Compl. ¶¶ 1, 17).  On February 14, 2006, JCBH responded by filing its Motion to Dismiss all of Plaintiff's claims with prejudice.  (Doc. 5).

## II.   STANDARD OF REVIEW

The court may dismiss a complaint under Rule 12(b)(6) only if its appears beyond a doubt that Plaintiff can prove no set of facts in support of her claims which would entitle her to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).  In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party."  *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002), citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998).

4

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalyrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003), quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036, n. 16 (11th Cir. 2001). "A complaint may not be dismissed because the Plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original), citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967). "The threshold of sufficiency that a complaint must meet to survive a Motion to Dismiss for failure to state a claim is . . . 'exceedingly low.'" *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985), quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir. 1983).

## III.  ANALYSIS

### A.  Sovereign Immunity

JCBH argues that it is an arm of the State of Alabama, and is therefore protected from Plaintiff's claims by sovereign immunity under both the Eleventh Amendment of the United States Constitution and Art. I, §14 of the Alabama Constitution.  See *Abusaid v. Hillsborough County Bd. of County Com'rs*, 405 F.3d 1298 (11th Cir. 2005), and *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.2d

842 (1890).   JCBH cites to several cases that appear to classify it as an arm of the State, including *Williams v. Madison Co. Bd. of Health*, 523 So.2d 453 (Ala.Civ.App. 1988); *Smith v. Smith*, 778 So.2d 189 (Ala.Civ.App. 1999); *Davenport v. Neely*, 7 F.Supp.2d 1219 (M.D.Ala. 1998); and *Bathgate v. Mobile Co. Bd. of School Com'rs*, 689 So.2d 109 (Ala.Civ.App. 1996).   Each of these cases supports JCBH's assertion that county boards of health are under the "general supervision and control of the state board of health." *Williams* at 455.

Plaintiff contends that JCBH is not an arm of the State entitled to sovereign immunity.   Plaintiff asserts that JCBH is unique among the county boards of health in Alabama in its conduct of personnel affairs because JCBH was removed from the State Merit System, which governs the employment matters of all other county boards of health in the state, by the Alabama legislature under 1945 Alabama Act 248 (hereinafter "the Enabling Act"), and therefore operates independently when it conducts employment affairs.

To determine whether Plaintiff is correct in this argument, the Court must examine the Enabling Act, in which the Alabama legislature established a countywide merit system to govern the personnel matters of counties with populations that exceed

400,000.[4]

The Enabling Act does not apply to most of the county boards of health whose status was in question in the cases cited by JCBH.[5]  Those counties are, instead, subject to the State Merit System, created under Ala. Code 1975 §36-26-1, *et. seq.*, which specifically excepts JCBH from its coverage.[6]  Hence, Plaintiff argues, none of the cases cited by JCBH support its position that JCBH is an arm of the State.

The determination must therefore be made whether the Enabling Act indeed precludes JCBH from arm-of-the-State status.  No court has decided whether JCBH, removed from the State Merit System by the Enabling Act, acts as an arm of the State when it conducts personnel matters.  If the court finds that JCBH is not unique among the county boards of health in Alabama, but is in fact an arm of the State, Plaintiff's claims will be barred by JCBH's Eleventh Amendment sovereign immunity, and must be dismissed in their entirety.

---

[3] According to the United States Census Bureau, Jefferson County housed a population exceeding 400,000 at all times relevant to the present case.

[5] In *Williams*, the Alabama Court of Civil Appeals found that Madison County, with a population of 231,324 people in 1988, was a State agency.  That court also held that Mobile County was a State agency in *Bathgate* in 1996, when the county housed a population of 396,163.  In *Davenport*, the United States District Court for the Middle District of Alabama held that the State Department of Public Health was a State agency.  Because the Enabling Act applies only to counties, *Davenport* has no bearing on JCBH's status under the Enabling Act.

[6] Ala. Code 1975 § 36-26-83 provides that "[t]he provisions of this article shall not apply to any county health department whose employees are covered by a countywide personnel or Merit System."

### 1.   *Abusaid* and the four-factor analysis

Plaintiff points to the Eleventh Circuit decision in *Abusaid* in support of her argument that JCBH is not a State agency.  405 F.3d at 1303.  In *Abusaid*, the plaintiff sued both Hillsborough County and the Hillsborough County sheriff for allegedly violating his due process rights by enforcing a local dance hall ordinance that harmed the plaintiff's business.  405 F.3d at 1298.  Both defendants asserted Eleventh Amendment sovereign immunity against the plaintiff's § 1983 claims.  405 F.3d at 1302.

Concluding that the sheriff did not act as an arm of the State when he enforced the local ordinance, the court explained that

> the law is "well-settled that Eleventh Amendment immunity bars suits brought in federal court when an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (*en banc*).  The more difficult question--whether the entity sued is an arm of the state--"must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id*.  As the Supreme Court has explained in determining whether a sheriff is a state or county policy maker for purposes of a § 1983 action, "the question is not whether [the sheriff] acts for [the state] or [the county] in some categorical, 'all or nothing' manner," but rather whether the sheriff is acting for the state "in a particular area, or on a particular issue." *McMillan v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).

*Abusaid*, 405 F.3d at 1303.

The pertinent function in the present case is JCBH's conduct of personnel affairs.  The court must next consider: (1) how JCBH is defined by Alabama law; (2)

8

the degree of State control over JCBH; (3) the source of JCBH's funds; and (4) whether the State must pay for judgments entered against JCBH. *Abusaid*, 405 F.3d at 1303. If these factors weigh in favor of arm-of-the-State status, the Court must find that JCBH is entitled to Eleventh Amendment sovereign immunity.

JCBH does not argue that these factors weigh in favor of arm-of-the-State status. It argues instead that the court should not apply the four-factor test to determine its status, because *Abusaid* is factually distinguishable from the present case. JCBH appears to argue that the analysis should be applied only to cases involving county sheriffs who are sued for enforcing local dance hall ordinances.

The court disagrees that the four-factor test is not applicable to the present case. The test has been applied in multiple contexts by the Eleventh Circuit Court; the analysis originated in *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 , 97 S.Ct. 568, 573-74, 50 L.Ed.2d 471 (1977), and has since developed further in Eleventh Circuit case law. See *Abusaid*, 405 F.3d at 1303 (applying test to county sheriff); *Manders*, 338 F.3d at 1309 (county sheriff); *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000) (private, third party administrator of state employee health insurance plan); *Stewart v. Baldwin Co. Bd. of Educ.*, 908 F.2d 1499, 1509 (11th Cir. 1990) (county school board); *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985) (state university);

9

and *Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518, 1520 (11th Cir. 1983) (state park authority).  In light of this development, the Court will conduct the four factor test to determine whether JCBH should be considered a State agency when it conducts employment affairs.

a.   **JCBH's status under Alabama law**

The Court has found no provision in Alabama statutory or case law that specifically designates JCBH as either an arm of the State or an independent entity for purposes of Eleventh Amendment immunity.[7]

Alabama Code 1975 § 22-3-1 states that the county boards of health "shall be under the general supervision and control of the State Board of Health."  This provision, by itself, appears to weigh in favor of arm-of-the-State status for JCBH.  However, when the Alabama legislature created the State Personnel Department under Ala. Code 1975 §36-26-1, *et seq.*, it specifically excluded from the Department "any county health department whose employees are covered by a countywide personnel or Merit System."   Ala. Code 1975 § 36-26-83.   Because JCBH's employees are covered by a countywide merit system created under the Enabling Act,

---

[7]JCBH cites to *Smith v. Smith*, in which the Alabama Court of Civil Appeals referenced JCBH as a State agency entitled to sovereign immunity under the Alabama Constitution. *Smith* at 191.  However, it does not necessarily follow that JCBH is also a State agency for purposes of the separate doctrine of Eleventh Amendment sovereign immunity.  See *Abusaid*, 405 F.3d at 1314.

the Alabama Code appears to expressly exclude JCBH from the State's conduct of employment matters.

The Enabling Act also distinguishes State employees from county employees who are covered by a countywide merit system.  The Act provides that "[a]ny person now or hereafter holding permanent status as an employee of the State of Alabama . . . may be appointed by an appointing authority [of the County] . . . to a position . . . in the classified service herein set up. . . ." 1945 Alabama Act 248, § 21.  The language of this provision appears to classify State and county employees as working in the service of two separate entities.

### b.    Degree of control by the State

The Enabling Act sets out specific commands for the county personnel board and personnel director to follow, thus reserving some State control over JCBH.  Upon further examination of the Act, however, §§ 18-23 appear to grant the county considerable discretion in carrying out these commands relative to the discretion granted to its State counterpart.  For example, under a countywide merit system, the personnel director is charged with providing names of eligible persons to fill vacancies.  1945 Ala. Act 248 § 18.  While the director is authorized to prescribe examinations to help determine such eligibility--subject to final approval by the county personnel board--the director is not given any more specific guidelines for

11

aiding him or her in determining eligibility.  Id.

Furthermore, employees may be promoted "[w]ithin the discretion of the director of personnel."  Id., § 20.  The State, by contrast, expressly reserved such power to itself in its own administration of the State Personnel Department.[8]  With regard to State employees who are appointed to a position covered by the Enabling Act as described in part (a) of this analysis, such employees must be recommended by the *county* personnel director to the *county* personnel board for approval.  Id., § 21.  The board's decision regarding the director's recommendation "shall be final." Id.

Further examples of JCBH's independence from the State in conducting personnel matters are found in §§ 18, 19-21 of the Enabling Act.  The "appointing authority" is given discretion to determine the length of an employee's leave of absence, and to reinstate or transfer employees from one position to another.  §§ 18-19, 21.  "Appointing authorit[ies]" are also empowered to dismiss or suspend employees "whenever [they] consider[ ] the good of the service to be served thereby.

---

[8]Ala. Code 1975 § 36-26-15 provides that "the [State Personnel] [D]irector shall conduct tests to establish employment registers for the various classes of positions in the classified service.  The tests shall take into consideration elements of character, reputation, education, aptitude, experience, knowledge, skill, personality, physical fitness and other pertinent matters. . . ."  By contrast, § 12 of the Enabling Act provides that the county personnel director shall "[a]ppoint or remove such subordinates as may be necessary to administer a scientific and economical personnel system and fix their compensation."  The Enabling Act contains no further guidelines for the county personnel director to follow in filling vacancies.

. . ."  Id., § 22.  In *Abusaid*, the court considered the amount of discretion vested in the sheriff and found that such independence weighed against arm-of-the-State status when he exercised that discretion.  405 F.3d at 1309.

Ala. Code 1975 § 22-3-4 empowers the county health officer to "remove from office any assistant or employee, *subject to the rules of the appropriate merit system*." (Emphasis added).  For counties covered by the Enabling Act, of course, the appropriate merit system is that of the county, not the State.  In a countywide merit system, an employee who disputes a suspension or dismissal may appeal to the county personnel board, which must investigate the claim and order a public hearing to determine the legitimacy of the discipline.  1945 Ala. Act 248 § 10.  If the board finds that the suspension or dismissal was unwarranted, it must order a reinstatement of the employee "under such conditions *as the board may determine*."  Id.  (Emphasis added).  The board is also specifically authorized to "make up and file its own findings and decision[s]" regarding other disciplinary actions.  Id.  The board's decisions are deemed final, apparently not subject to review by the State.  Id.  Finally, the Enabling Act provides that "[t]he Board *in its discretion* may extend or grant permanent status to any or all employees . . . employed . . . by the County Board of Health. . . ."  1945 Ala. Act 248 § 10 (emphasis added).  It should be noted that similar exercises of discretion are reserved by the State in administering the State

Merit System.   Plaintiff argues that the State's abrogation of such authority over JCBH, while retaining it over other county health boards, should weigh against arm-of-the-State status for JCBH.

Reaching a similar conclusion in *Abusaid*, the Eleventh Circuit explained:

[t]hat the state prescribes some functions for sheriffs is not insignificant, nor does it transform sheriffs into state officers in the execution of all duties. . . . [M]any of the functions assigned to the sheriff are carried out . . . at the sole discretion of the county. . . .

405 F.3d at 1309.

While the Enabling Act sets out specific procedural mandates for JCBH to carry out, it also grants considerable discretion and final authority in the personnel matters now before the court.  For example, § 17 of the Act authorizes the county personnel director to maintain employee performance evaluations.  Evaluations are to be given by department heads or supervisors "in accordance with regulations *prescribed by the personnel board*," rather than by the State.  Id.  (Emphasis added). While the Act provides that such performance ratings are grounds for changes in an employee's pay rate, promotion, demotion, lay-off, transfer, or dismissal, the Act does not specify the frequency with which such performance ratings should be given.  Id. The State does not appear to have exercised any significant control over employee performance evaluations, beyond mandating that they be given and that they be used

14

for certain purposes.  JCBH, therefore, apparently acted on its own authority in failing

to provide Plaintiff with the performance evaluations presently at issue.

   **c.      Financial support by the State**

   Ala. Code § 22-3-5(11) requires that the office of the county health officer be

provided by the county commission of each county in Alabama.  The Alabama Code

appears to give substantial financial autonomy to each county board of health:

> the county commission shall appropriate from the revenue of the county such sums
> as are found necessary to furnish and equip the office of the county health officer
> with all necessary supplies and furnish all necessary staff, transportation and other
> expenses of the county health officer and shall appropriate, from the revenues of
> the county, money for the prosecution of public health work which has been
> recommended by the county health officer and endorsed by the county board of
> health and approved by said county commission. . . .

Ala. Code 1975 § 22-3-5(11).  Ala. Code 1975 § 22-3-6 also provides that "[t]he

salary of the county health officer shall be *fixed by the appropriate merit system*, and

shall be payable from funds available to the county for this purpose. . . ."

   Section 4 of the Enabling Act provides that the salaries "and all other expenses

of the personnel board, the personnel director and all others arising under the

provisions hereof" shall be paid by "the general fund of the county."  The Act further

characterizes the salary of county employees as a "liability" of the county, rather than

the State.  Id.

Ala. Code 1975 § 36-26-1, *et seq.*, which does not apply to JCBH, requires that the salary of the State Personnel Director be fixed by the State Personnel Board and approved by the governor of Alabama.  Ala. Code 1975 § 36-26-7.  The Enabling Act, by contrast, requires only that the county personnel director's salary be fixed by the county personnel board, and contains no reference to any participation by the State.  1945 Ala. Act 248 § 10.  JCBH therefore appears to enjoy substantial financial independence from the State in its conduct of employment affairs, particularly in comparison with other county boards of health.

### d.  Financial responsibility for judgments against JCBH

As previously discussed, § 4 of the Enabling Act requires the county to pay the salaries of its employees out of a "general fund of the county."  Ala. Code § 22-3-12 provides additionally that counties that have established a budget to fund all "claims, demands, or expenses of the health department" must pay such claims out of that budget.  The provision makes no reference to the State's liability for judgments entered against any county board of health, but appears to leave such accountability to the counties themselves.  JCBH has directed the court to no other provision in the Enabling Act or the Alabama Code that places financial responsibility for any of JCBH's expenses with the State.

The Eleventh Circuit Court has instructed that an entity's responsibility to pay

for judgments entered against it "weighs heavily against extending the state's Eleventh Amendment immunity to the challenged conduct."  The Eleventh Circuit has stated repeatedly that "the Eleventh Amendment is unlikely to protect an entity with 'fiscal autonomy.'"  *Hufford v. Rodgers*, 912 F.2d 1338, 1342 (11th Cir. 1990), quoting *Fincher v. State of Florida Dept. of Labor and Employment Security*, 798 F.2d 1371 (11th Cir. 1986), *cert. den.*, 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987).

e. **JCBH is not entitled to Eleventh Amendment sovereign immunity under the four-factor test**

While JCBH has conceded that it "is not a part of the State Personnel Board system," it has offered no argument or explanation as to why the provisions of the Alabama Code and the Enabling Act do not preclude it from arm-of-the-State status in its conduct pertaining to  personnel affairs.  It continues, however, to insist that it is an arm of the State for all purposes, without engaging in the four-factor analysis most recently used by the Eleventh Circuit Court in *Abusaid*.  However, based on the relevant provisions of the Enabling Act and the Alabama Code, and the extensive use of the four-factor test approved by the Eleventh Circuit, the Court has concluded that JCBH is not an arm of the State in its conduct pertaining to personnel matters. Plaintiff's claims against JCBH, therefore, may not be dismissed on the basis of

17

JCBH's Eleventh Amendment sovereign immunity.

### 2.    § 1983 applicability to JCBH

JCBH next argues that it is protected from Plaintiff's § 1983 claims because it is not a "person" for purposes of that statute.  42 U.S.C. § 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects or causes to be subjected, any citizen of the United State . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

JCBH argues that it is not a "person" under § 1983 because that term has been held to exclude States.  See *Howlett v. Rose*, 496 U.S. 356, 376, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332 (1990).  However, while States are excluded from liability under § 1983, the United States Supreme Court has held that counties are not similarly protected.  See *Abusaid*, 405 F.3d at 1314-15, citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 663, 98 S.Ct. 2018, 2021-22, 56 L.Ed.2d 611 (1978).  On the contrary, the Court has concluded that "municipalities and other local government unities" are "persons" subject to § 1983 claims.  *Monell*, 436 U.S. at 690, 98 S.Ct. at 2036.  The court therefore finds JCBH's argument that it is not a "person" under § 1983 without merit.

18

### 3.      State sovereign immunity

JCBH next argues that it is entitled to sovereign immunity under the Alabama

Constitution.  Ala. Const. Art. I, § 14 provides that "the State of Alabama shall never

be made a defendant in any court of law or equity."  This immunity has been extended

to State agencies.  See *Bathgate* at 111.

Even if the court had concluded that JCBH is a State agency otherwise entitled

to Alabama sovereign immunity, it would nevertheless be subject to an action brought

under § 1983.  In *Owen v. City of Independence*, the United States Supreme Court

explained that

> [c]onduct by persons acting under color of any state law which is wrongful under
> 42 U.S.C. § 1983 . . . cannot be immunized by state law.  A construction of the
> federal statute which permitted a state immunity defense to have controlling effect
> would transmute a basic guarantee into an illusory promise; and the [S]upremacy
> [C]lause of the Constitution insures that the proper construction may be enforced.

445 U.S. 622, 647, n. 30, 100 S.Ct. 1398, 1414, 63 L.Ed.2d 673 (1980).

The Eleventh Circuit Court applied this rule in *Abusaid*, where it concluded

that Hillsborough County could not avoid the plaintiff's § 1983 claims by asserting

sovereign immunity under the Florida Constitution.  405 F.3d at 1314-15.  Similarly,

because "state sovereign immunity principles are no bar to § 1983 claims against a

county," the court finds that JCBH may not assert the sovereign immunity offered by

19

the Alabama Constitution to shield itself from liability under § 1983.  *Abusaid*, 405 F.3d at 1315.

## B.      Due Process

Having concluded that JCBH is not protected from Plaintiff's claims under Eleventh Amendment or state sovereign immunity, the Court now considers whether Plaintiff is entitled to relief under either substantive or procedural due process.

### 1.      Substantive Due Process

Plaintiff argues that she has an enforceable property right in annual performance reviews, merit increases, and back pay because she has a reasonable expectation of receiving them.  She explains that this expectation was created by statute, personnel board regulations, and Department of Health regulations and procedures.  Plaintiff further asserts that her property right was denied when JCBH failed to provide her with these entitlements.  She alleges that JCBH also improperly calculated the amount of her back pay when it eventually paid her.  Finally, she argues that JCBH has still failed to provide her with performance incentives to which she remains entitled.

JCBH responds that Plaintiff's claims fail as a matter of law because she does not allege the deprivation of a fundamental right as required to trigger the protection of substantive due process.

Plaintiff counters that the Jefferson County Personnel Board Rules create an enforceable, "mutually recognizable entitlement" by providing that she could obtain annual merit increases if she received favorable performance reviews. *Ledbetter v. Brown*, 569 F.Supp. 170, 173 (N.D.Ga. 1983). In *Ledbetter*, the district court held that a state employee had a property interest in receiving an expected promotion. *Id.* The court explained that this property interest was created by state statute and personnel board rules and regulations. *Id.*

Despite the decision in *Ledbetter*, binding precedent compels the court to reach a different conclusion. The Supreme Court has instructed that

> [t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. . . . The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Bishop v. Wood*, 426 U.S. 341, 349-50, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976).

The Eleventh Circuit Court applied this rule in *McKinney v. Pate*, where it declined to extend Fourteenth Amendment protection to the plaintiff's asserted property interest in his employment after he alleged that he had been wrongfully terminated. 20 F.3d 1550, 1556 (11th Cir. 1994). The court explained that

> [a]lthough the Supreme Court has extended substantive due process protection to certain unenumerated rights, it has not extended Fourteenth Amendment coverage to a host of other areas. . . .  The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field. . . .  Hence, remaining largely outside the scope of substantive due process jurisprudence [is] public employment law. . . .  In short, areas in which substantive rights are created only by state law (as is the case with . . . employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution. . . ."  As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural--not substantive--due process are observed.

*Id.*, quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985), citing *Bishop v. Wood*, 426 U.S. at 350, 96 S.Ct. 2074, 2080.

In light of established precedent, the Court cannot find that, as to JCBH, Plaintiff has suffered the loss of a property right that is protected by substantive due process.  Consequently, Plaintiff must show that JCBH's conduct resulted in a deprivation of her right to procedural due process to prevail on her claim.

## 2.    Procedural Due Process

Plaintiff "has a procedural due process claim if she can show the deprivation of a property or liberty interest."  *Gilder-Lucas v. Elmore Co. Bd. of Educ.*, 399 F.Supp.2d 1267, 1272 (M.D.Ala. 2005), citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982).  "The hallmark of

property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan*, 455 U.S. at 430, 102 S.Ct. 1148, 1155, quoting *Memphis Light, Gas, & Water Div. v. Craft*, 436 U.S. 1, 11-12, 98 S.Ct. 1554, 1561-62, 56 L.Ed.2d 30 (1978). "A constitutionally protected property interest is created if there are 'rules or mutually explicit understandings that support [a] claim of entitlement." *Warren v. Crawford*, 927 F.2d 559, 562 (11th Cir. 1991), quoting *Perry v. Sinderman*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705 33 L.Ed.2d 548 (1972).

Plaintiff argues that Jefferson County Personnel Board Rule 8.2 establishes a constitutionally-protected property interest. Rule 8.2 provides certain procedures regarding performance reviews, merit raises, and bonuses.

Two different versions of Rule 8.2 were in effect when Plaintiff's cause of action arose. Both are therefore relevant to determining whether Plaintiff may prevail on her procedural due process claim. The first version, in effect from 2001 until January 2003, provided that

> [t]he appointing authority shall use a rating plan approved by the Director of Personnel. Such plan shall be based on accepted personnel administration practices in respect to the measurement of performance and promotional potential. All employees who are responsible for preparing ratings shall do so in a careful and responsible manner, conforming with existing policies as established by the Personnel Board in cooperation with the appointing authority.

This version of Rule 8.2 was in effect only during the first two years in which

the alleged due process violations occurred.  However, the Court cannot find that this version of the rule furnishes Plaintiff with an entitlement to annual performance evaluations or the corresponding benefits she claims.  While the rule provides that performance evaluations are to be given in accordance with "accepted personnel administrative practices" and "existing policies," Plaintiff has not explained what these practices or policies are, or whether and how they supplement the language of this rule to provide her with the entitlement she now asserts.  The Court therefore finds that JCBH's Motion to Dismiss is due to be **GRANTED** as to Plaintiff's 2001 and 2002 performance evaluations and corresponding benefits.

The second version of Rule 8.2 came into effect in January 2003 and covers Plaintiff's claims as to her 2003 and 2004 performance reviews.  Rule 8.2(c) provides in relevant part:

> [s]alary advancement within established Pay Grades shall be based on meritorious performance on the job. . . .  An efficiency review reflecting satisfactory performance shall be required for advancement. . . .  A Classified Employee [which includes Defendant's employees] shall be eligible for future one-step annual increases until such time as the Classified Employee reaches the maximum Pay Step for the Pay Grade.

Rule 8.2(c) appears to entitle Plaintiff to annual salary increases, but only if she receives a favorable performance review for each year.  It necessarily follows that an employee who does not receive a performance review will not be entitled to a merit

24

increase for that year, regardless of his or her meritorious job performance.  The rule

therefore provides at the very least an expectation that Plaintiff would receive annual

performance reviews to determine her eligibility for a merit increase. Consequently,

JCBH's failure to provide Plaintiff with performance reviews during 2003 and 2004

violated Plaintiff's procedural due process right because Rule 8.2(c) supplied her with

a reasonable expectation that she would receive them.

While Plaintiff has demonstrated this reasonable expectation to the court's

satisfaction, she has conceded that she received performance reviews for those years.

She argues that, although JCBH has granted her back pay that should reflect merit

increases and corresponding benefits for 2003 and 2004, this amount is insufficient

to fully compensate her.[9]  Plaintiff also argues that JCBH "unilaterally determined"

the amount of her back pay, and improperly failed to include her in the calculation

process.

JCBH has not responded to Plaintiff's argument that it improperly excluded her

from its calculation process.  Plaintiff, however, has not directed the Court's attention

to, nor has the Court discovered, any personnel board rule or state statute that entitles

her to be heard during the calculation process.

---

[9]Plaintiff alleges that JCBH paid her $18,644.25, which does not include the interest she
claims she is due.

The only claim that remains before the court is the proper amount of back pay owed by JCBH.  Contrary to Plaintiff's claim that she received $18,644.25, JCBH alleges that it paid her $19,399.45.  Because Rule 8.2(c) provides that "[a] Classified Employee shall be eligible for future one-step annual increases until such time as the Classified Employee reaches the maximum Pay Step for the Pay Grade," Plaintiff has demonstrated an entitlement to a merit increase up to a particular amount.  The facts do not establish whether the amount tendered by JCBH is sufficient to place Plaintiff within the proper range of compensation for 2003 or 2004.  The court therefore finds that JCBH's Motion to Dismiss with regard to the amount of back pay for 2003 and 2004 is due to be **DENIED.**

## IV. CONCLUSION

Construing all facts in the light most favorable to Plaintiff, and accepting all well-pleaded factual allegations as true, the court finds that Plaintiff has not shown any set of facts that would entitle her to relief against JCBH for the 2001 and 2002 performance reviews and corresponding employment benefits that she seeks.  Plaintiff has, however, sufficiently demonstrated an entitlement to relief from JCBH for the 2003 and 2004 performance evaluations and corresponding benefits.  Because Plaintiff has received these evaluations and a measure of benefits in the form of back pay, the court finds that JCBH's Motion to Dismiss is due to be **DENIED** as to

whether Plaintiff was sufficiently compensated for 2003 and 2004.  As to all other claims asserted against JCBH by Plaintiff relating to 2003 and 2004, JCBH's Motion to Dismiss is due to be **GRANTED.**

A separate **ORDER** will be entered.

**DONE** this 21st day of August, 2006.


**VIRGINIA EMERSON HOPKINS**
United States District Judge