FILED

2007 Mar-28  AM 11:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| TERRIE OUTLIN, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No.:  2:06-CV-147-VEH |
| | ) |
| THE JEFFERSON COUNTY | ) |
| BOARD OF HEALTH, and | ) |
| THE JEFFERSON COUNTY | ) |
| PERSONNEL BOARD, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

The court has before it the December 11, 2006 Motion for Summary Judgment (Doc. #31) filed by Defendant Jefferson County Board of Health (the "JCBH").  The court also has before it JCBH's January 19, 2007 Motion to Strike (Doc. #39).

Having considered the briefs and evidentiary submissions on summary judgment, the court finds that JCBH's Motion for Summary Judgment (Doc. #31) is due to be granted for the reasons outlined below.  JCBH's Motion  to Strike (Doc. #39) is due to be granted in part and denied in part as moot as set out below.

### I.  INTRODUCTION

Plaintiff Terrie Outlin ("Outlin") initiated this lawsuit against JCBH on January 24, 2006.  (Doc. #1).  The verified complaint contains two (2) counts brought against

JCBH pursuant to 42 U.S.C. § 1983:  Count I alleges substantive due process violations and Count II alleges procedural due process violations.  (*See generally* Doc. #1).  The counts all arise out of JCBH's alleged failure to provide Outlin with annual performance reviews, merit increases, and back pay.  (*Id.*).  On  August 21, 2006, the court dismissed all of Outlin's claims against JCBH with the exception of her procedural due process ones relating to the amount of back pay that she received for 2003 and 2004.  (Doc. #23; Doc. #24).

On July 11, 2006, Outlin filed an amended complaint.  (Doc. #18).  The purpose of the amended complaint was to add the Jefferson County Personnel Board (the "Personnel Board") as a party.  On September 19, 2006, the court dismissed all of Outlin's claims against the Personnel Board.  (Doc. #27; Doc. #28).

## II.    SUMMARY JUDGMENT STANDARD

In *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270 (11th Cir. 2006), the Eleventh Circuit summarized the respective burdens on summary judgment:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that

there is a genuine issue for trial." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quotations and emphasis omitted). If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense. *See Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir.2003).

*International Stamp*, 456 F.3d at 1273 -74.

## III.   STATEMENT OF FACTS[1]

### A.   Outlin's Position as Program Manager

Outlin began employment with JCBH in March 1996.  (Doc. #1 ¶ 5).  On or around October 11, 1997, Outlin was promoted to Principal Public Health Representative of the STD Program, which was later renamed Disease Intervention Program Manager ("Program Manager").   AF No. 4.[2]  Outlin held the position of

_____

[1]If the facts are in dispute, they are stated in the manner most favorable to the non-moving party.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Accordingly, these are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[2]The designation "AF" stands for admitted fact and indicates a fact offered by the JCBH that Outlin has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case.  Whenever Outlin has adequately disputed a fact offered by the JCBH, the court has accepted Outlin's version. The court's numbering of admitted facts (e.g., AF No. 1) corresponds to the numbering of the JCBH's Statement of Facts as set forth

Program Manager when she initiated the current action.  (Doc. #1 ¶ 5).

### B.   The Personnel Board's Pay Plan.

Throughout Outlin's employment as Senior Public Health Representative and Program Manager, she has been a "Classified Employee" as that term is defined by the Rules and Regulations of the Personnel Board ("PB Rules").  AF No. 5.

PB Rule 1.3 defines "Classified Employee" as "[a] person appointed (*i.e.*, hired) by an Appointing Authority for employment in the Classified Service."  AF No. 6.  PB Rule 1.2 defines "Classified Service" as "all persons employed by the jurisdictions referenced in Rule 1.1," which includes the JCBH. AF No. 7.  Pursuant to PB Rule 16.1 and the Enabling Act, Outlin, as a "Classified Employee", is paid pursuant to the Personnel Board's "Pay Plan."  AF No. 8.

The Personnel Board's Pay Plan categorizes positions into classes, grouping the positions according to "terms of difficulty, responsibility, and general qualifications." AF No. 9.  Each class is paid according to a specific pay grade.  AF No. 10.  Within each pay grade are ten steps, with step one being the lowest pay level in the grade and step 10 being the highest pay level in the pay grade.  AF No. 11.

---

in Doc. #32 and responded to by Outlin in Doc. #35.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

Each step equates to a pay increase, based on merit.  AF No. 12.  Thus, when an employee receives a merit increase, the employee advances a step.  AF No. 13.

PB Rule 8.2(c) governs the "Administration of the Pay Plan" and provides, in pertinent part,  as follows:

> Each Classified Employee shall be paid at one of the Pay Grades set forth in the Pay Plan for the position in which he or she serves, in accordance with these Rules and the special provisions for administering the Pay Plan.
>
> a.    <u>Minimum Rate</u>.   New Appointments to the Classified Service shall be made at one of the beginning steps (step 1, 2, 3, or 4) of the Pay Grade for the position to which the appointment is made. A new appointment at step two (2), three (3), or four (4) of the Pay Grade shall be based on outstanding education and/or experience qualifications of the Eligible Candidate.
>
> b.    <u>Authorized Step Increase</u>.  An Appointing Authority may not make an initial appointment above step (4) of the pay Grade unless requested in writing and approved by the Board.
>
> ****
>
> c.    <u>Salary Advancement</u>.  Annual salary advancement within established Pay Grades shall be based on meritorious performance on the job and shall be in accordance with the special provisions for administering the Pay Plan. An efficiency review reflecting satisfactory performance shall be required for advancement.  At the discretion of the Appointing Authority, a Classified Employee with continued satisfactory service shall be eligible for future one-step annual increases until such time as the Classified Employee reaches the maximum Pay Step for the Pay Grade.

\*\*\*\*

AF No. 14.  The pay rates assigned to each step within a grade are set forth in the JCBH's Salary Schedules.  AF No. 15

The JCBH implements a new Salary Schedule every October in conjunction with the JCBH's implementation of cost of living increases.  AF No. 16.  Historically, cost of living increases have been two (2%) percent or three (3%) percent per year. AF No. 17.  Cost of living increases bear no relationship to an employee's job performance or merit.  AF No. 18.

A JCBH employee's pay rate is determined by the applicable grade and step contained in the Salary Schedules.  AF No. 19.

### C.    Outlin's Pay, Performance Appraisals and Merit Increases as Program Manager.

When Outlin became Program Manager in October 1997, Program Manager was classified at grade 26, and she was paid at grade 26, step three.  AF No. 20.  The Personnel Board conducted a salary survey in 1997.  AF No. 21.  As a result of the survey, the Personnel Board reclassified Outlin's position from grade 26 to grade 27 in January 1998.  AF No. 22. When Outlin's position was reclassified, Outlin was paid at pay grade 27, step four.  AF No. 23.

In October 1998, Outlin was awarded a merit increase after she received a satisfactory performance appraisal, and her pay was raised to pay grade 27, step five.

AF No. 24.  In October 1999, Outlin was awarded a merit increase after she received a satisfactory performance appraisal, and her pay was raised to pay grade 27, step six. AF No. 25.

In October 2000, Outlin was awarded a merit increase after she received a satisfactory performance appraisal, and her pay was raised to pay grade 27, step seven.  AF No. 26. In October 2001, Outlin received  two "below expectations" ratings in her 2001 performance appraisal, which made her ineligible for a merit increase.  AF No. 27.  The performance appraisal forms specify, "To receive a merit increase, an employee cannot receive two or more marks in 'Below Expectations' column."  AF No. 28.

### D.    Outlin Challenges Results of 2001 Performance Appraisal

Outlin appealed the results of her 2001 performance appraisal to the Executive Director of the Personnel Board and the Personnel Board, both of whom affirmed the results given by the JCBH.  AF No. 29.    The Personnel Board specifically held:

> On February 25, 2002, the Personnel Board of Jefferson County heard and carefully reviewed all the materials and information presented during your appeal of the Executive Director's decision regarding your most recent performance appraisal.  It is the decision of the Board that no adjustment will be made with respect to that performance appraisal with the effective date 10/06/01.

AF No. 30.

7

Outlin then appealed the Personnel Board's decision to the Circuit Court of Jefferson County.  AF No. 31.  The Three-Judge Panel reversed the decision of the Personnel Board in June 2004. AF No. 32.   The order of the Circuit Court provided as follows:

> This matter came before the undersigned Panel of Judges on a petition for writ of certiorari filed on behalf of the appellant, Terrie Outlin.  In said petition, the appellant contends that this panel should reverse the Decision of the Personnel Board of Jefferson County ("Personnel Board") of February 15, 2002 which upheld the results of a performance evaluation administered by the Jefferson County Board of Health ("Board of Health") in October 2001.  The Personnel Board, the Board of Health and Ms. Outlin submitted briefs on the issues raised in said petition, and the Panel heard oral argument regarding the merits of the same on February 5, 2004.
>
> Upon consideration of the Parties' written submissions, including the record and evidence of the proceedings below, and argument of counsel, the Panel finds that the decision of the Personnel Board is not supported by substantial and legal evidence.
>
> It is hereby **ORDERED**, **ADJUDGED** and **DECREED** that the appellant's petition for writ of certiorari is **GRANTED** and the Personnel Board's decision of February 15, 2002 is **REVERSED**.  Cost [sic] taxed as paid.

AF No. 33.

The Three-Judge Panel's Order was not addressed to the JCBH, did not direct the JCBH to act, and did not explain what should be done with regard to the 2001 appraisal. AF No. 34.

In October 2004, Outlin filed a Motion for Entry of Order Consistent with Order of Three-Judge Panel with the Personnel Board.  AF No. 35.  The Personnel Board entered an Order instructing the JCBH to file a written submission informing the Personnel Board of "the steps it [had] taken to comply with the three-judge panel's decision of June 4, 2004."  AF No. 36.

In response to the Personnel Board's Order, the JCBH filed a Motion for Stay and Clarification requesting the Personnel Board to direct the JCBH how to comply with the Three-Judge Panel's Order and how to administer the 2001 performance appraisal. AF No. 37.  The JCBH's Motion has been pending with the Personnel Board since November 2004.  AF No. 38.

### E.    Outlin's Change in Anniversary Date

The JCBH's employees generally receive their performance appraisals on or around their anniversary dates.  AF No. 39.  The performance appraisals are completed on forms generated by the Personnel Board.  AF No. 40.   Until 2002, Outlin's anniversary date as Program Manager was October of each year based on the date of her promotion, *i.e.* October 1997.  AF No. 41.  In October 2002, Outlin took a voluntary leave of absence without pay which continued through 2003.  AF No. 42. Outlin's voluntary leave of absence resulted in her anniversary date changing from October to March.  AF No. 43.

9

**F.     Outlin's Retroactive 2003 and 2004 Performance Appraisals**

In April 2005, Jim Mangum, Outlin's supervisor with the JCBH, administered Outlin's 2003 and 2004 Performance Appraisals.  AF No. 44.  Based on the results of both appraisals, Outlin received merit increases.  AF No. 45.

**G.     Outlin's Merit Increases for 2001, 2003 and 2004 and Back Pay Calculations.**

Since the JCBH was never instructed as to how to handle the 2001 performance appraisal, the JCBH decided to treat the appraisal as though Outlin had been eligible for a merit increase as of October 6, 2001.  AF No. 46.  In April, 2005, Randy Manzella ("Manzella"), the Deputy Director of Finance and Administration for the JCBH, directed Denise Spivey ("Spivey"), Administrative Coordinator for the JCBH, to calculate Outlin's back pay beginning October 6, 2001 through April 1, 2005, based on her receiving merit increases in October 2001, March 2003, and March 2004. AF No. 47.  Specifically, Manzella directed Spivey to calculate the difference between what Outlin had been paid from October 6, 2001 through April 1, 2005 and what she would have been paid had she been awarded merit increases in October, 2001, March, 2003, and March, 2004.  AF No. 48.

Spivey, as Administrative Coordinator, is responsible for overseeing the administration of the JCBH's payroll system.  AF No. 49.  Spivey calculated Outlin's

back pay by determining the difference in the amount Outlin was paid and what Outlin would have received with merit increases for each pay period from October 6, 2001 through April 1, 2005, utilizing the pay rates set forth in the JCBH's applicable Salary Schedules from 2001, 2002, 2003, and 2004.  AF No. 50.  Outlin agrees Ms. Spivey used the appropriate method to calculate her back pay.  AF No. 51.

The JCBH's Salary Schedules break down the pay rates for each step into bi-weekly and hourly rates.  AF No. 52.  The JCBH's pay periods accrue every two weeks.  AF No. 53.  Thus, the JCBH employees are paid every two weeks or 26 times per year.  AF No. 54.

From October 6, 2001, through April 1, 2005, there were 91 pay periods.  AF No. 55.  In performing her calculations, Spivey pulled the JCBH's pay history sheets and made notes regarding each pay period to ensure she accounted for each pay period from October 6, 2001 through April 1, 2005.  AF No. 56. Outlin's merit increase for the October 2001 performance appraisal would have been effective on October 6, 2001.  AF No. 57. At this time, the JCBH's 2001 Salary Schedule governed the pay rates for the JCBH employees.  AF No. 58.

Without the 2001 merit increase, Outlin was paid at grade 27, step seven, which equates to an hourly rate of $27.27 and a bi-weekly rate of $2,181.60.  AF No. 59.  With the 2001 merit increase, Outlin's pay would have changed to grade 27, step

11

eight, which equates to an hourly rate of $28.65 and a bi-weekly rate of $2,292.00.

AF No. 60.  Outlin would have been paid at the same rate until October 5, 2002, when

the JCBH implemented a three (3%) percent cost of living increase and its 2002

Salary Schedule.  AF No. 61.

From October 6, 2001, through October 4, 2002, there were 26 pay periods.

AF No. 62.  For 25 of the 26 weeks, Outlin worked 80 hours per pay period, resulting

in her back pay for each of those pay periods to be $110.40.  AF No. 63. During the

twelfth pay period, Outlin worked only 68 hours, resulting in her back pay being

equal to $93.84 for that pay period.  AF No. 64.

As of October 5, 2002, Outlin's pay rate at step seven without the 2001 merit

increase was $2,247.20 bi-weekly or $28.09 hourly, according to the 2002 Salary

Schedule.  AF No. 65.  With the 2001 merit increase, Outlin's pay at step eight would

have increased to $2,360.80 bi-weekly and $29.51 hourly.  AF No. 66.

Outlin's pay would have remained at this level for 11 pay periods from October

5, 2002 through March 7, 2003, the last day of the pay period before she received her

2003 merit increase.  AF No. 67.  During this time frame, Outlin took her voluntary

leave of absence without pay, working only during pay periods beginning October 5,

2002 and February 22, 2002.  AF No. 68. Since Outlin only worked a total of 55.5

hours during this time frame, she was entitled to $78.81 in back pay from October 5,

2002 through March 7, 2003.  AF No. 69.

Outlin would have received her next merit increase on March 8, 2003 as a result of her 2003 Performance Appraisal.  AF No. 70.  The 2002 Salary Schedule was still in effect as of March 8, 2003.  AF No. 71. Outlin's 2003 merit increase resulted in her advancing to step nine of grade 27, which equates to $2,476.80 bi-weekly and $30.96 hourly.  AF No. 72.

Outlin's pay would have remained at this level for 15 pay periods through October 3, 2003, the next cost of living increase.  AF No. 73.  Twelve (12) out of the fifteen (15) pay periods, Outlin worked 80 hours; during the remaining three pay periods, Outlin worked less than 80 hours.  AF No. 74.

Based on Spivey's calculations, the total back pay Outlin was due from March 8, 2003, through October 3, 2003, was $3,352.88.  AF No. 75.  Outlin was awarded a three (3%) percent cost of living increase on October 4, 2003, the same day that the 2003 Salary Schedule was implemented.  AF No. 76.  With the cost of living increase of October 4, 2003, Outlin's pay would have increased to $2,551.20 bi-weekly and $31.89 hourly after applying the 2003 merit increase.  AF No. 77.

Outlin would have been paid at this level for 12 pay periods through March 19, 2004, when her 2004 merit increase would have been implemented.  AF No. 78. During each of these pay periods, Outlin worked 80 hours.  AF No. 79.

Outlin's back pay from October 4, 2003, through March 19, 2004, was $2,841.60. AF No. 80. Outlin's 2004 merit increase would have been effective on March 20, 2004. AF No. 81. Awarding Outlin a merit increase effective March 20, 2004 resulted in Outlin's pay being increased to grade 27, step ten, the maximum step for her pay grade. AF No. 82.

### H.   Outlin Reaches Highest Step of Pay Grade for Position of Program Manager

Because Outlin had reached step ten of her pay grade, she is no longer eligible for any merit increases in her position as Program Manager. AF No. 83. The only other pay increases for which Outlin is eligible are the JCBH's cost of living increases. AF No. 84. Outlin's pay would have remained the same beginning March 20, 2004, through October 2, 2004, when the JCBH implemented a three (3%) percent cost of living increase and its 2004 Salary Schedule. AF No. 85.

From March 20, 2004, through October 2, 2004, there were 14 pay periods, and Outlin worked 80 hours during each of these pay periods. AF No. 86. Outlin's back pay from March 20, 2004 through October 2, 2004 was $5,129.60. AF No. 87.

When Outlin received her cost of living increase on October 2, 2004, her pay rate at step ten increased by three (3%) percent to $2,761.60 bi-weekly and $34.52 hourly. AF No. 88. Outlin's pay remained at this level through April 1, 2005. AF

14

No. 89.

From October 2, 2004, through April 1, 2005, there were 13 pay periods.  AF No. 90.  During 12 out of the 13 pay periods, Outlin worked 80 hours, and for one pay period she worked 56 hours.  AF No. 91. Outlin's back pay from October 2, 2004, through April 1, 2005, was $4,795.52.  AF No. 92.

### I.      Outlin's Total Back Pay Award

Outlin's total back pay for each pay period from October 6, 2001, through April 1, 2005, was $19,052.25.  AF No. 93.

### J.      Back Pay Calculation Error in Favor of Outlin

However, when Spivey calculated Outlin's back pay in April, 2005, she overestimated Outlin's back pay by counting two pay periods twice.  AF No. 94. Specifically,  Spivey counted Outlin's back pay for pay periods beginning April 20, 2002, and November 15, 2003 twice.  AF No. 95.  By counting these pay periods twice, Spivey overestimated Outlin's back pay by $347.20, which equates to $110.40 for the pay period beginning April 20, 2002 and $236.80 for the pay period beginning November 15, 2003.  AF No. 96.  Thus, based on counting pay periods April 20, 2002 and November 15, 2003 twice, Spivey calculated that Outlin was owed $19,399.45 in April, 2005.  AF No. 97.

The correct calculations for this time frame were actually $19,052.55.  AF No.

98. Spivey did not discover her calculation error until she rechecked her calculations during the pendency of this litigation.  AF No. 99.

### K.   Communications Relating to Outlin's Back Pay Calculation and Award

Randy Manzella stated to Outlin that her pay was being calculated based upon the pay rates set forth in the JCBH's Salary Schedule without explaining or demonstrating what that meant or how that calculation was to be performed.  AF No. 100.[3]  Manzella told Outlin that the JCBH was going to pay her the difference between what she had actually been paid and what she would have been paid had she received merit increases in October 2001, March 2003, and March 2004, based on the pay rates contained in the applicable salary schedules.  AF No. 101. Manzella invited Outlin to perform her own calculations to ensure the JCBH did not err in its calculations.  AF No. 102.

Outlin never informed anyone at the JCBH of any errors in calculations.  AF No. 103.  Outlin is unaware of any rule or statute that entitles her to be involved in the calculation of her pay.  AF No. 104.

---

[3]This is the only fact of the JCBH's version that Outlin indicated she disputed. (*See generally* Doc. #35 § I.A.).  The court has accepted Outlin's version, but agrees with JCBH that to the extent a dispute between the two versions exists as opposed to merely a clarification from Outlin, the substance of any such conflict is not material to the disputed legal issues before the court.

**L.      The JCBH's Payment of Back Pay to Outlin for 2001, 2003, and 2004 Merit Increases.**

Manzella directed Spivey to pay Outlin the amount of back pay she calculated, *i.e.* $19,399.45, in Outlin's paycheck of April 22, 2005.  AF No. 105.  Outlin received the lump sum payment of $19,399.45 in her paycheck dated April 22, 2005.  AF No. 106.

The back pay was directly deposited into Outlin's checking account, consistent with the manner in which she normally receives her paychecks.  AF No. 107.  Outlin understood that the lump sum payment of $19,399.45 constituted back pay for her merit increases effective October 2001, March 2003, and March 2004.  AF No. 108. Outlin has no reason to believe Spivey incorrectly calculated her back pay.  AF No. 109.

Outlin does not know "whether or not [she] should have been paid more than $19,399.45."  AF No. 110.  Outlin performed calculations at one time, but does not remember how she performed her calculations or her result.  AF No. 111.  The only documentation Outlin has relating to back pay calculations is a spreadsheet that does not contain any actual calculations or back pay amount.  AF No. 112. Even though Outlin created the spreadsheet and input all information contained in the spreadsheet, she cannot explain its contents or meaning.   AF No. 113.

17

IV.   A<sup>NALYSIS</sup>

## A.    Prior History on Outlin's Remaining Claims

In the court's prior Memorandum Opinion (Doc. #23) relating to the partial

denial of JCBH's Motion to Dismiss, the court explained:

> The second version of Rule 8.2 came into effect in January 2003 and
>
> covers Plaintiff's claims as to her 2003 and 2004 performance reviews.
>
> Rule 8.2(c) provides in relevant part:
>
>> [s]alary advancement within established Pay Grades shall be
>> based on meritorious performance on the job. . . .  An efficiency review
>> reflecting satisfactory performance shall be required for advancement.
>> . . .  A Classified Employee [which includes Defendant's employees]
>> shall be eligible for future one-step annual increases until such time as
>> the Classified Employee reaches the maximum Pay Step for the Pay
>> Grade.
>
>> Rule 8.2(c) appears to entitle Plaintiff to annual salary increases,
>
> but only if she receives a favorable performance review for each year.
>
> It necessarily follows that an employee who does not receive a
>
> performance review will not be entitled to a merit increase for that year,
>
> regardless of his or her meritorious job performance.  The rule therefore
>
> provides at the very least an expectation that Plaintiff would receive
>
> annual performance reviews to determine her eligibility for a merit
>
> increase.  Consequently, JCBH's failure to provide Plaintiff with

18

performance reviews during 2003 and 2004 violated Plaintiff's procedural due process right because Rule 8.2(c) supplied her with a reasonable expectation that she would receive them.

While Plaintiff has demonstrated this reasonable expectation to the court's satisfaction, she has conceded that she received performance reviews for those years. She argues that, although JCBH has granted her back pay that should reflect merit increases and corresponding benefits for 2003 and 2004, this amount is insufficient to fully compensate her. Plaintiff also argues that JCBH "unilaterally determined" the amount of her back pay, and improperly failed to include her in the calculation process.

JCBH has not responded to Plaintiff's argument that it improperly excluded her from its calculation process. Plaintiff, however, has not directed the Court's attention to, nor has the Court discovered, any personnel board rule or state statute that entitles her to be heard during the calculation process.

The only claim that remains before the court is the proper amount of back pay owed by JCBH. Contrary to Plaintiff's claim that she received $18,644.25, JCBH alleges that it paid her $19,399.45. Because

19

Rule 8.2(c) provides that "[a] Classified Employee shall be eligible for future one-step annual increases until such time as the Classified Employee reaches the maximum Pay Step for the Pay Grade," Plaintiff has demonstrated an entitlement to a merit increase up to a particular amount. The facts do not establish whether the amount tendered by JCBH is sufficient to place Plaintiff within the proper range of compensation for 2003 or 2004. The court therefore finds that JCBH's Motion to Dismiss with regard to the amount of back pay for 2003 and 2004 is due to be **DENIED**.

Accordingly, the issue for the court to address is whether JCBH has shown that the back pay awards to Outlin are sufficient as a matter of law. If not, a trial on the back pay awards would be necessary. The court concludes that JCBH has met its burden on summary judgment.

### B.    Outlin's Procedural Due Process Claims

To establish her claim for procedural due process relating to the 2003 and 2004 performance appraisals, Outlin must prove she was deprived of a protected property or liberty interest. *See Parratt v. Taylor*, 451 U.S. 527 (1981); *Montgomery v. City of Birmingham*, No. 98-AR-2100-S, 2000 WL 1608620, at *14 (N.D. Ala. Jan. 20, 2000). "The hallmark of property . . . is an individual entitlement grounded in state

law, which cannot be removed except for cause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978)) (internal citations omitted).  As explained by the Eleventh Circuit, a property interest is, therefore, created by "rules or mutually explicit understandings that support [a] claim of entitlement." *Warren v. Crawford*, 927 F.2d 559, 562 (11th Cir. 1991).

As previously ruled by this court, Outlin had a reasonable expectation under the applicable personnel rule that she would receive a performance review for 2003 and 2004, for which a procedural due process violation could lie.  Because Outlin subsequently received performance reviews for both absent years, the procedural due process issue before the court now is limited to the sufficiency of the back pay award Outlin received.

### 1.   Sufficiency of Retroactive Reviews

Outlin does not dispute these critical facts:  (1) that she received retroactive appraisals for 2003 and 2004; (2) that she was eligible for merit increases as a result of both appraisals; (3) that the JCBH awarded her merit increases as a result of both appraisals; and (4) that the JCBH compensated her for these merit increases when  it

paid her back pay in April 2005.[4]

The mere delay in the reviews is insufficient to support a procedural due process claim as it is well settled that a procedural due process violation has not occurred unless and until the alleged state actor has failed to remedy the inadequacy. *See, e.g., McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) (holding "when a state procedure is inadequate, no procedural due process right has been violated unless and until the state fails to remedy that inadequacy"); *Cotton v. Jackson*, 216 F.3d 1328 (11th Cir. 2000) (where there is an adequate remedy, there has been no deprivation).  Because Outlin cannot show the JCBH failed to remedy any alleged inadequacies arising out of her delayed appraisals, a procedural due process violation has not occurred.

## 2.     Sufficiency of Overall Back Pay Award

Outlin also lacks sufficient evidence that her back pay award in April 2005 did not fully compensate her for either 2003 or 2004.   Contrary to her previous allegations that she received $18,644.25 in back pay, Outlin now admits the JCBH paid her $19,399.45 in back pay on April 22, 2005, to compensate her for merit

---

[4]As a result of these retroactive adjustments, Outlin's 2004 merit increase resulted in her being compensated at pay grade 27, step ten, which topped her out with regard to pay for the position of Program Manager, excluding any cost of living adjustments.  AF No. 83; AF No. 84.

increases awarded in connection with her 2001, 2003, and 2004 performance appraisals. (AF No. 93). Spivey, the JCBH's Administrative Coordinator, calculated this amount. (AF No. 50).

Moreover, Outlin admits she has no reason or evidence to dispute Spivey's calculations. (AF No. 51). Specifically, Outlin testified, "I never disputed [Spivey's] calculations were wrong. . . . I was not disputing that it was right or wrong." (Outlin Depo. at 174:19-20, 175:1-2).[5]

Outlin stated that the way to calculate her back pay is to (1) determine the difference between the pay rates she actually received and the pay rates she should have received in 2001, 2002, 2003, and 2004 based on the applicable salary schedules and (2) multiply this difference by the number of hours worked. (Outlin Depo. at 178:18-179:1). This process is consistent with Spivey's testimony as to how she performed the retroactive calculations, by starting with Outlin's pay rate in October 2001 without the merit increases (grade 27, step seven of the JCBH's 2001 Salary Schedule), and determining the difference between her pay at step seven and the pay she would have received had her merit increases been implemented on October 6, 2001, March 8, 2003, and March 20, 2004, for each of the 91 pay periods.

Similarly, Outlin has not raised any challenge as to the rates applied by Spivey

---

[5]A copy of Outlin's deposition transcript is located at Doc. #33 at Ex. 3.

or pointed out any mathematical errors.[6]  In fact, during her deposition, Outlin was

unable to substantiate how much more than $19,399.45 in back pay she should have

received.[7]  (Outlin Depo. at 175:15-176:6; 176:14-14-25; 180:21-181:21, 198:24-

199:1).

However, even if Outlin were able to establish an error to her detriment in the

JCBH's totaling of her back pay, a mere mistake without more would not support her

procedural due process claim.  "[T]he Due Process Clause is simply not implicated

by a negligent act of [the JCBH] causing unintended loss of or injury to life, liberty

or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Accordingly, Outlin has

failed to adduce sufficient facts from which a reasonable trier of fact could conclude

that her procedural due process rights were violated concerning her 2003 and 2004

reviews and subsequent back pay award.[8]

---

[6]Instead as admitted by Outlin, the record actually points to a back pay calculation error in favor of her in the amount of $347.20.  AF No. 96.

[7]Similarly, in her opposition to summary judgment, Outlin has failed to substantiate why her calculations of $21,330.40 in back pay, as referenced in a letter from her counsel dated April 26, 2005, are correct.  (Doc. #35 § I.C.).

[8]Outlin's additional facts as supported by her affidavit offered in opposition to summary judgment do not create any material issues of disputed fact as it pertains to her retroactive back pay award.  (*See generally* Doc. #36 at attachment 1).  To the extent that Outlin's affidavit conflicts with her prior deposition testimony or the facts to which she has already admitted, JCBH's Motion to Strike is **GRANTED** on the basis of the rule in *Van T. Junkins & Assoc. Inc. v. U.S. Indus., Inc.*, 736 F.2d 656,

### 3.   Outlin's Component Challenges to Her Back Pay Award Lack Merit

In her opposition brief, Outlin chiefly complains that her back pay award is insufficient because it does not include either a   Performance Incentive Award ("PIA") or an interest component.  (*See generally* Doc. #35).  Neither one of these challenges survives summary judgment.

---

657 (11th Cir. 1984) (stating that a "party cannot . . . create . . . an issue [of fact] with an affidavit that merely contradicts, without explanation, previously given clear testimony."  (*See* Outlin Aff. 19.5 ("When Randy 'invited' me to provide them with my own calculations, it seemed as though they were trying to trick me into providing them with my calculations without having to disclose how they had performed theirs."); Doc. #35 § I.B. ¶ 18.6 (same)).  Similarly, Outlin's statements as to her beliefs and perceptions (and corresponding facts) are **STRICKEN** on the basis that they lack the requisite specificity or a sufficient foundation as to her personal knowledge.  (*See* Outlin Aff. ¶¶   14.2, 14.5 ("To my knowledge, the PIAs [Performance Incentive Awards] were applied across the board to all employees meeting those criteria." and "[T]hey were universally expected."); Doc. #35 § I.B. ¶ 13.2, ¶ 13.4 (same); Outlin Aff. ¶ 15.2 ("Since I received performance appraisals sufficient  to trigger merit raises for those years, I should have received PIAs those two years as well."); Doc. #35 § I.B. ¶ 14.2 (same)).  The JCBH's remaining challenges in its Motion to Strike point to the weaknesses in her affidavit, including redundancy and immateriality.  Those portions of the JCBH's Motion to Strike are **DENIED** as **MOOT** because, even considering that evidence, the JCBH is still entitled to summary judgment because the statements have no bearing on the procedural due process issue before the court—the constitutional sufficiency of Outlin's back pay award.

       **a.**    **Outlin has not demonstrated a sufficient reasonable expectation of entitlement to a PIA as a component of back pay.**

Turning first to PIA, Outlin is generally correct in suggesting that a bonus, such as a PIA, may appropriately be considered a component of back pay, *see, e.g., Cox v. American Castiron Pipe Co.*, 784 F.2d 1546, 1562 (11th Cir.), *cert. denied*, 479 U.S. 883 (1986) (citing *Pettway v. ACIPCO*, 494 F.2d 211, 263 (5th Cir.1978)) (noting that back pay is beyond "straight salary" and is to include overtime, shift differentials, bonuses, and fringe benefits such as vacation and sick pay).  However, Outlin has failed to show any admissible evidence that would support her having a reasonable expectation of a right to receive it, which is fundamental to maintaining a procedural due process claim over it.[9]

Generally, the record shows that the PIA program was a creature of the JCBH (as opposed to the Personnel Board).  (Doc. #36 at attachment 1 ¶ 13; Doc. #38 at Ex. 20 at Ex. A (PIA as part of the Policy and Procedural Manual for the JCBH)).

---

[9]The parties disagree over the meaning of this court's prior order which limits Outlin's potential recovery for back pay as to 2003 or 2004.  The critical issue is not the terminology used by the court, but rather whether a potential procedural due process interest exists for the amount that Outlin is claiming that the JCBH owes her. Outlin has met that reasonable expectation hurdle with the annual merit increases delineated under Personnel Board Rule 8.2(c).  However, Personnel Board Rule 8.2(c) makes no mention of other potential components of compensation such as bonuses.

Accordingly, no Personnel Board rule governing the PIA policy exists.  Additionally and contrary to Outlin's additional facts,[10] the receipt of a PIA was not automatic and required the satisfaction of certain criteria.  (Doc. #38 at Ex. 20 ¶ 3; Doc. #38 at Ex. 20 at Ex. A).

> **b.    Alternatively, Outlin has not demonstrated any wrongful conduct or damage for 2003 or 2004 concerning her treatment under the JCBH's PIA program.**

More specifically as it applies to Outlin, the record shows (1) that she was not eligible for a PIA in 2003 due to reasons unrelated to her failure to receive a review, *i.e.* her extended leave of absence from work (Doc. #38 at Ex. 20 ¶ 4);[11] and (2) that on December 10, 2004, she received $524.69 for her 2004 PIA.[12]  (Doc. #38 at Ex.

---

[10]As a supervisor, Outlin would have personal knowledge as to the general purpose of the PIA program and as to any awards that she made to subordinates under it.  However, she has not laid a sufficient foundation in her affidavit to testify as to how the PIA program was applied throughout the JCBH and, more specifically, the PIA decision-making process as applied to her.  Accordingly, the court has stricken those portions of her affidavit and related facts that go beyond the reasonable scope of Outlin's personal knowledge.  *See supra*, n.8.

[11]Outlin's own affidavit implicitly acknowledges her ineligibility for a PIA in 2003.  (Doc. #36 at attachment 1 ¶ 15.4 ("Even if that suspension properly disqualified me for a PIA in 2003 . . . .")).

[12]The court notes that Outlin indicates in her affidavit that she "never received a PIA for 2004[.]"  The documentary evidence offered by JCBH undisputedly refutes Outlin's mistaken recollection.  (Doc. #38 at Ex. 20 at Ex. B (Employee Payroll Deduction Inquiry for Outlin dated December 10, 2004, for $524.69); Doc. #38 at Ex.

20 ¶ 5).  Accordingly, even if Outlin is able to generally establish a procedural due process right in the receipt of a PIA as part of a back pay calculation, she is unable to show a wrongful withholding of a PIA by the JCBH for either 2003 or 2004. Therefore, Outlin's PIA procedural due process claim alternatively fails for lack of proof of any wrongful conduct or resulting damage.

### c.     Outlin has not demonstrated a sufficient reasonable expectation of entitlement to prejudgment interest as a back pay component.

As for interest, Outlin has not cited to any Personnel Board, case, or statutory authority which substantiates that a state merit system employee has a right to receive prejudgment interest on awards of back pay made prior to trial.  While Outlin points to *Hargray v. City of Hallandale*, 830 F. Supp. 1467 (S.D. Fla. 1993) to support her claim for interest, that case is distinguishable because, unlike Outlin's situation, the constitutionally protected property interest arose under Florida law and the back pay award occurred at trial and over three (3) years after the plaintiff's employment had been terminated.  Moreover, the district court's decision in favor of the plaintiff in *Hargray* was subsequently reversed by the Eleventh Circuit in 1995.  *Id.*, 57 F.3d 1560, 1573 (11th Cir. 1995) ("As such, he has no due process claim, and is entitled

_____

20 at Ex. C (PIA Score Sheet dated October 28, 2004, and signed by Outlin on October 29, 2004)).

to neither reinstatement nor damages."). Accordingly, *Hargray* does not support Outlin's claim for prejudgment interest.

Moreover, as JCBH notes, the case of *Whitlow v. City of Birmingham*, 689 So. 2d 107 (Ala. Civ. App. 1996), *cert. denied*, (No. 1960445, Feb. 28, 1997), establishes that, under Alabama law, Outlin is not entitled to prejudgment interest, and therefore a procedural due process right for the recovery of interest does exist for Outlin. In *Whitlow*, one of the issues facing the Alabama Court of Civil Appeals, upon transfer of the appeal by the Supreme Court of Alabama, was whether the public employee plaintiff "was entitled to prejudgment interest on her backpay[.]" 689 So. 2d at 108. The plaintiff based her entitlement to interest upon Alabama Code § 8-8-8, Alabama's so-called prejudgment interest statute. *Id.*

In affirming the trial court's decision denying an award of prejudgment interest on the plaintiff's back pay amount, the Alabama Court of Civil Appeals stated:

> Although we acknowledge analogous authority to the contrary in other jurisdictions, we conclude that our prejudgment interest statute, § 8-8-8, is limited strictly to contract actions and, in light of the decisions of our supreme court in *Douglas* and *Mitchell*, *supra*, we hold that the statute does not apply to awards of backpay for municipal employees.

*Whitlow*, 689 So. 2d at 109. Accordingly, *Whitlow* refutes Outlin's due process claim for prejudgment interest on her back pay award.

## IV.   CONCLUSION

The JCBH has met its burden on summary judgment of demonstrating the absence of a material factual dispute and entitlement to judgment as a matter of law. Accordingly, the JCBH's Motion for Summary Judgment (Doc. #31) is due to be **GRANTED**.  More specifically, Count II of Outlin's complaint based upon 2003 and 2004 procedural due process violations is due to be **DISMISSED WITH PREJUDICE**. Further, as no more claims remain in the case, Outlin's complaint is also due to be **DISMISSED WITH PREJUDICE**.  Finally, the JCBH's Motion to Strike (Doc. #39) is due to be **GRANTED IN PART** and **DENIED IN PART** as **MOOT** to the extent addressed within this Memorandum Opinion.  The court will enter a separate order.

**DONE** and **ORDERED** this 28th day of March, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

30